UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLIAM FRINTZILAS and ANGELO POZZUTO, Individually and On Behalf of All Others Similarly Situated,

Plaintiffs,

-against-

DIRECTV, LLC and MAS TEC, INC.,

Defendants.

Civil Action No.: 7:17-CV-2368-VB

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE COMPLAINT**

BLAU LEONARD LAW GROUP
23 Green Street, Suite 303
Huntington, NY 11743
631-458-1010
sblau@blauleonardlaw.com
sleonard@blauleonardlaw.com

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........ iii

**PRELIMINARY STATEMENT** ........ 1

**STATEMENT OF MATERIAL FACTS** ........ 2

a. Plaintiff Landlords ........ 2

b. MAS TEC ........ 5

c. DIRECTV'S Landlord Permission Form. ........ 6

**ARGUMENT** ........ 7

POINT I. THE LEGAL STANDARD UNDER RULE 12(b) (6) ........ 7

POINT II. PLEADING REQUIREMENTS UNDER §349 OF THE N.Y. GENERAL BUSINESS LAW ........ 8

POINT III. THE COMPLAINT PLEADS A PRIMA FACIE CASE UNDER N.Y. GENERAL BUSINESS LAW § 349 ........ 10

1. Business Law § 349 is Not Limited to Consumers ........ 10

2. Defendants Engaged in Consumer Oriented Activity Causing Harm to the Public Interest ........ 11

4. Defendants' Acts Were Misleading In a Material Way ........ 17

5. Plaintiffs Have Suffered Ascertainable Loss. ........ 19

6. An Action Brought under §349 Does Not Require Proof of Actual Reliance ........ 20

POINT IV. THE OTARD REGULATIONS DO NOT PREEMPT INDEPENDENT COMMON-LAW CLAIMS ........ 21

**CONCLUSION** ........ 23

## TABLE OF AUTHORITIES

*Am. Home Prods. Corp. v. Johnson & Johnson*, 577 F.2d 160, 165 (2d Cir. 1978) ......... 17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ........................................................ 7

*Beneficial Corp. v. FTC,* 542 F.2d 611, 617 (3rd Cir.1976), cert. denied, 430 U.S. 983 (1977). ........................................................................................................ 17

*Bildstein v. MasterCard Int'l Inc.,* 329 F. Supp. 2d 410,414 (S.D.N.Y. 2004) ............... 17

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris U.S.A. Inc.,* 3 N.Y.3d 200, 205 (N.Y. 2004) ............................................................................................................ 10

*Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 786 F.Supp. 182, 215 (E.D.N.Y.), vacated in part on other grounds, 973 F.2d 1033 (2d Cir. 1992) ................................ 10

*Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314 (1983). ................. 22

*City of New York v Smokes-Spirits.Com, I*nc., 12 NY3d at 622-624 .............................. 10

*Country Tweeds, Inc. v. F. T. C.*, 326 F.2d 144, 148 (2d Cir.1964). ................................ 17

*Elacqua v Physicians' Reciprocal Insurers,* 52 AD3d 886, 888 [2008 ............................ 12

*Farino v. Jiffy Lube International, Inc.,* 298 A.D.2d 553, 748 N.Y.S.2d 673, 673 (2d Dep't 2002) ...................................................................................................... 21

*Flattau v. John HancockMut. Life Ins. Co.*, 1986 WL 14977, at *3 (S.D.N.Y.1986) ....... 18

*Fritz v. Resurgent Capital Services, LP*, 955 F.Supp.2d 163, 174 (E.D.N.Y.2013) ......... 20

*FTC v. P.MC.S., Inc.*, 21 F.Supp.2d 187, 190 (E.D.N.Y.1998). ........................................ 17

*FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1029 (7th Cir.1988) ......... 17

*Gaidon v Guardian Life Ins. Co. of Am.*, 94 NY2d at 344 ............................................. 8,12

*Genesco Entertainment v. Koch*, 593 F.Supp. 743, 751 (S.D.N.Y.1984) .......................... 10

*Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985) .................................................... 7

*Hechter v. New York Ins. Co.,* 46 N.Y.2d 34 (1978) ......................................................... 21

*In re Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (N.Y.1995) ............................................................................................................ 11

*Jones v. City of Albany*, 151 N.Y. 223 (1896) .................................................................. 21

*JPMorgan Chase Bank, N.A. v. Controladora Comercial Mexicana S.A.B. DE C.V.*, 2010 WL 4868142, at *11 (2010) ........ 8

*Karlin v IVF Am.*, 93 NY2d at 293 ........ 12

*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) ........ 9

*Leider v. Ralfe,* 387 F. Supp. 2d 283,292 (S.D.N.Y. 2005) ........ 20

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir.2007) ........ 7

*Midland Funding, LLC v. Giraldo*, 39 Misc.3d 936, 950, 961 N.Y.S.2d 743 (Dist.Ct. Nassau County 2013) ........ 19

*New York Univ. v Continental Ins. Co.,* 87 NY2d at 320 ........ 12

*New York v Feldman,* 210 F Supp. 2d 294, 301 [S.D.N.Y 2002] ........ 11

*Ng v. HSBC Mortg. Corp.*, 2010 WL 889256, at * 14 (E.D.N.Y. 2010) ........ 9

*Novartis Corp. v. F.T.C.,* 223 F.3d.783, 787 (D.C. Cir. 2000 ........ 17

*Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir.2005) ........ 8,20

*People v. Colorado State Christian College*, 76 Misc.2d 50, 54-56 (Sup.Ct.N.Y.Co.) ........ 11

*Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir.1995) ........ 12

*Sims v. First Consumers Nat'l Bank*, 303 A.D.2d 288, 290, 758 N.Y.S.2d 284 (1st Dep't 2003) ........ 8

*Small v Lorillard Tobacco Co.*, supra, at 55 ........ 8

*Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) ........ 7,20

*Sports Traveler, Inc. v. Advance Magazine Publishers, Inc.*, 1997 WL 137443, at *2 (S.D.N.Y.1997 ........ 16

*Stutman v Chemical Bank*, 95 N.Y.2d 24 (2000) ........ 8

*Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 513 (2002) ........ 9

*Twombly*, 550 U.S at545 ........ 7

*Walts v First Union Mtge. Corp.*, 259 AD2d 322, 323) ........ 21

*Williams v. Aries Financial, LLC*, 2009 WL 3851675, at *10 (E.D.N.Y.2009) ........ 9

*Willner v. Allstate Ins. Co.*, 893 N.Y.S.2d 208, 218 (2d Dep't 2010) ........ 19

*Wilner v Allstate Ins. Co.,* 71 AD3d 155, 164 [2010] ........ 12

## PRELIMINARY STATEMENT

Plaintiffs bring this action individually, and on behalf of all similarly situated persons and/or entities ("Landlords") that own and/or lease residential dwelling unit properties ("RDU's") in the State of New York, upon which Defendants, by their agents, servants and/or employees have, on at least one occasion during the applicable statutory period, without first receiving prior written or verbal Landlord authorization and/or permission, installed DIRECTV satellite equipment on the roof and/or exterior walls of said RDUs.

Plaintiffs allege individual and class violations of §349 of the New York General Business Law ("GBL") and seek injunctive relief, actual/compensatory damages, costs and reasonable attorney's fees for Defendants' deceptive business practices and violations of public policy.

Plaintiffs also allege individual causes of action for common law trespass.

The Defendants' Motions, pursuant to Rule 12(b)(6), to Dismiss Plaintiffs' §349 GBL claims should be denied [Doc. Nos. 4, 14]. Plaintiffs have alleged with great specificity, the symbiotic, if not parasitic business relationship they have with DIRECTV/MAS TEC. The New York courts have persistently stated, in no uncertain terms, that §349 GBL imposes no requirement of a consumer relationship; concluding that the statute is not limited to conduct involving consumer injury and that a competitor or other business person can maintain a cause of action thereunder when, as here, a defendant engages in consumer-oriented' activity causing harm to the public interest.

DIRECTV recently brought (August 2, 2017) a copycat motion to dismiss Plaintiffs' New York General Business Law §349 claims.[1] Opposition to the Motion to Dismiss filed by Defendant MAS TEC and the "me too" Motion by DIRECTV are briefed and argued herein. In lieu of needless repetition, Plaintiffs submits this submission and duly incorporates all material facts, evidence and prior legal arguments in this single Memorandum of Law and submit that the Court should deny the relief sought by both MAS TEC and DIRECTV.

## STATEMENT OF MATERIAL FACTS

### a. Plaintiff Landlords

Plaintiffs are the owners and landlords of residential dwelling units ("RDU") located in Westchester and Nassau Counties, State of New York. Plaintiffs are in the business of renting residential units, pursuant to a written lease. In consideration for permitting tenants use and occupancy, Plaintiffs are paid monthly rent by each tenant. Plaintiffs-Landlords maintain exclusive control of all common areas of the RDUs, including the roofs and exterior walls.

DIRECTV is a leading provider, in New York, of digital television entertainment programming via satellite to residential and commercial subscribers. DIRECTV's digital entertainment programming is provided to subscribers by means

[1] Although DIRECTV only filed its motion today, Plaintiffs have agreed to submit this joint opposition in compliance with the Court's briefing schedule established for the MAS TEC motion to avoid further delay. (Plaintiff's Opposition to MAS TEC's motion is set for August 4, 2017). To the extent DIRECTV attempts to argue new legal principals outside of MAS TEC's submission under the guise of a purported "Reply," Plaintiffs reserve the right to request from this Honorable Court an opportunity to file an appropriate opposition submission.

of the Equipment that it leases to its subscribers and installs upon the RDU in which the subscriber rents and resides. (Complaint, Doc. No. 1 ¶17,18).

Because the DIRECTV system requires unrestricted “line of sight” access to a satellite, the Equipment is permanently affixed to the exterior of the RDU in which the subscriber resides and in which the subscriber’s television is to be used. DIRECTV Equipment is installed by drilling holes in the Plaintiffs’ RDU and bolting or otherwise permanently affixing the Equipment to the RDU. Installers permanently affix the Equipment to common or restricted areas of RDUs, including exterior walls or rooftops where the television is to be used, according to policies and procedures dictated by DIRECTV.

At all relevant times, MAS TEC had a contractual relationship with DIRECTV to install DIRECTV equipment at Plaintiffs’ RDU properties and at or on other RDUs, located elsewhere in New York. The contracts between DIRECTV and MAS TEC specify the nature of the satellite dish installation services they are to provide, and establish policies and procedures to which MAS TEC technicians must adhere.

MAS TEC agents and employees are trained to deal directly with Plaintiffs' tenants only. MAS TEC technicians are specifically trained not to seek verbal/written approval and consent for installation, directly from landlords. By circumventing the landlords, MAS TEC is enabled to tortiously interfere with the terms and conditions of tenant leases, which generally and/or expressly prohibit the installation and permanent affixation of DIRECTV equipment on common areas of

the subject RDUs. As part of their systematic business practices, Defendants cause the installation of DIRECTV satellite equipment on roofs and/or exterior walls of the RDUs owned by Plaintiffs and other putative Class members, on the mere representation of any Tenant-subscriber and/or family member over the age of 18 years, that "DIRECTV System installation at (address) has been verbally approved by my landlord (or is not required pursuant to my lease or rental agreement.)"

The Defendants' actions and conduct adversely affect the Plaintiff-landlords' exclusive possessory interest in their real property; was immoral, unethical, oppressive and unscrupulous. As a direct result, Plaintiffs and Class members have suffered ascertainable loss.

By inducing Plaintiffs' tenants to circumvent prohibitive terms and conditions of their lease, the Defendants' unfairly prevented Plaintiffs from competing in the residential rental market and caused Plaintiffs significant pecuniary loss. As landlords, Plaintiffs possessed the exclusive right to determine which, if any, cable and/or satellite dish vendor, would provide television programming to their tenants. Unlike cell tower operator/owners, neither MAS TEC nor DIRECTV ever paid or offered to pay any fees and/or other monetary consideration to Plaintiffs for the use/occupancy and/or installation of DIRECTV system Equipment on their roof. Further, upon the termination of tenant subscriptions to its satellite television service, DIRECTV abandons its Equipment, requiring Plaintiffs and Class members to expend their own time, money and

resources to remove and dispose of the equipment, as well as repair the RDUs at the sites of affixation.

**b. MAS TEC**

MAS TEC is a specialty contractor providing installation fulfillment services to DIRECTV and other companies specializing in the telecommunications, broadband cable, wireless, and satellite industries. MAS TEC is one of the largest DIRECTV installation and service companies in the United States, serving over 200,000 customers each month.

At all relevant times, MAS TEC had a contractual relationship with DIRECTV to install DIRECTV equipment at Plaintiffs' RDU properties and at or on other RDUs, located elsewhere in New York. Satellite system equipment installed by MAS TEC, pursuant to these contracts, is provided and/or sold to MAS TEC by DIRECTV. Satellite system equipment is installed by MAS TEC at the places of residence of DIRECTV customers/subscribers.

DIRECTV requires all prospective MAS TEC technicians to pass a criminal background check and drug screening test before working on behalf of DIRECTV. DIRECTV directs MAS TEC technicians to specific work sites and details the timeframe in which jobs must be completed. DIRECTV monitors the location of MAS TEC technicians, specifies the time at which they are supposed to arrive at appointments, and regularly evaluates completed work to ensure that it meets DIRECTV standards. DIRECTV determines the number of its customers that will

be serviced by MAS TEC technicians on any given day and the rate at which they are paid for each job.

In accordance with the Federal Communication Commission's Second Report and Order, In Re Matter of Implementation of Sec.207 of the Telecommunications Act of 1996, Restrictions on Over-the-Air Reception Devices, 1998 WL 888546 (1998), 47 C.F.R. 1.4000(d) ("OTARD") a tenant does not have direct or indirect control over the exterior walls or roof of an RDU, which are common or restricted areas, and therefore the Regulation does not authorize installation of Equipment in those areas without consent of the Landlord. In particular, the Second Report and Order *makes clear that DIRECTV cannot drill holes in an exterior wall or roof of an RDU without consent of the Landlord.*

MAS TEC installation technicians are trained to knowingly and intentionally violate these and other FCC rules and regulations, by drilling holes in the roof of the subject RDUs and permanently affix DIRECTV Equipment thereto, without the prior verbal or written consent of the Plaintiffs-Owners.

**c. DIRECTV'S Landlord Permission Form.**

MAS TEC has intentionally attempted to mislead the Court, by taking out of context, language from an outdated, online Landlord Permission Form (**Exhibit "A"**), that upon information and belief, has not been utilized at the point of service by DIRECTV and/or MAS TEC, for at least the past four (4) years.

In Exhibit "A" either the landlord actually executes the form in box No. 1 or the customer signs box No.2, making the following representation:

> Landlord approval of a DIRECTV System installation at [address] has been verbally approved by my landlord (or is not required pursuant to my lease or rental agreement).

For the past four (4) or more years, MAS TEC and other DIRECTV authorized Home Service Providers' installation technicians do not use hard copy Landlord Permission Forms such as Exhibit "A." Instead, installers use web based handheld devices that the customer signs at the time of installation, which feature the Landlord Permission Form, (**Exhibit "B"**) containing the following ambiguous content:

> I confirm that I have been *granted permission or authorize* the DIRECTV Home Service Provider to install a DIRECTV Satellite System at the above-mentioned address. I understand that a satellite dish may need to be permanently fixed to the structure and modifications, including the drilling of holes, may be necessary. In no event shall either the DIRECTV Home Service Provider OR DIRECTV have any obligation to remove the system or accept any liability whatsoever for violations of my lease/rental agreement.

(emphasis added)

## ARGUMENT

### POINT I. THE LEGAL STANDARD UNDER RULE 12(b) (6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir.2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts

to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). On a motion to dismiss for failure to state a claim, the question is "not whether a plaintiff will ultimately prevail." *Twombly*, 550 U.S at545. The question is whether the plaintiffs should be given the opportunity to offer evidence to support their claims. *Id.*

**POINT II. PLEADING REQUIREMENTS UNDER §349 OF THE N.Y. GENERAL BUSINESS LAW**

To state a claim under §349, a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result. *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir.2009).

The determination of whether G.B.L § 349 was violated "may be determined as a matter of law or fact." *JPMorgan Chase Bank, N.A. v. Controladora Comercial Mexicana S.A.B. DE C.V.*, 2010 WL 4868142, at *11 (2010)). In assessing the adequacy of GBL § 349 pleadings, courts may take into account the parties' relative bargaining positions and access to information. See, *Sims v. First Consumers Nat'l Bank*, 303 A.D.2d 288, 290, 758 N.Y.S.2d 284 (1st Dep't 2003). When Defendants, as here, exclusively possess information that a reasonable consumer would want to know and could not discover without difficulty, failure to disclose can constitute a deceptive or misleading practice. See *Oswego*, 85 N.Y.2d at 27.

A deceptive practice, however, need not reach the level of common-law fraud to be actionable under GBL §349; see, Gaidon, 94 N.Y.2d at 343. Further, as repeatedly stated by the New York Court of Appeals, *Stutman v Chemical Bank*, 95 N.Y.2d 24 (2000), reliance is not an element of a section 349 claim (see, *Small v Lorillard Tobacco Co.*, supra, at 55 ["Intent to defraud and justifiable reliance by the plaintiff are not elements of the statutory claim"]; Oswego supra, at 26 ["the statute does not require proof of justifiable reliance'].

"[A]n action under §349 is not subject to the pleading-with-particularity requirements of Rule 9(b), Fed.R.Civ.P., but need only meet the bare-bones notice-pleading requirements of Rule 8(a) …." *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir.2005). Thus, a private action brought under §349 extends well beyond common-law fraud to cover a broad range of deceptive practices, (see *Gaidon,* 94 N.Y.2d at 343) and because a private action under §349 does not require proof of the same essential elements (such as scienter and reliance) as common-law fraud, an action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b), Fed.R.Civ.P., but need only meet the bare-bones notice-pleading requirements of Rule 8(a), Fed.R.Civ.P., see generally *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 513 (2002); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993).

A Plaintiff failing to adequately plead a fraud claim does not necessarily also fail to plead a claim under GBL §349. See, e.g., *Ng v. HSBC Mortg. Corp.*, 2010 WL 889256, at * 14 (E.D.N.Y. 2010) ("Deceptive conduct that does not rise to the level of

actionable fraud, may nevertheless form the basis of a claim under New York's Deceptive Practices Act, which was created to protect consumers from conduct that might not be fraudulent as a matter of law, and also relaxes the heightened standards required for a fraud claim."); *Williams v. Aries Financial, LLC*, 2009 WL 3851675, at *10 (E.D.N.Y.2009) (granting the motion to dismiss the fraud claim for failure to plead with particularity under Rule 9(b), but denying the motion to dismiss the Consumer Protection Act claim).

## POINT III. THE COMPLAINT PLEADS A PRIMA FACIE CASE UNDER N.Y. GENERAL BUSINESS LAW § 349

### 1. Business Law § 349 is Not Limited to Consumers

New York General Business Law § 349(a) declares that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in" New York are unlawful. N.Y. Gen. Bus. § 349(a). The statute provides a private right of action. *Id.* at § 349(h); see *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris U.S.A. Inc.,* 3 N.Y.3d 200, 205 (N.Y. 2004).

The Court of Appeals has recognized that "section 349 is a broad, remedial statute and that the provision creating a private right of action employs expansive language" *Blue Cross*, 3 NY3d at 207. The Court has never explicitly held that section 349 (h) only confers standing on individual members of the consuming public. To the contrary, the Court has indicated that "limit[ing] the scope of section 349 to only consumers" would be "in contravention of the statute's plain language permitting recovery by any person injured `by reason of' any violation" (*Id.* at 207).

Accordingly, when analyzing the issue of whether a plaintiff has standing to commence a private action pursuant to section 349 (h), the Court of Appeals has confined its analysis to determining the nature of the alleged injury and whether it is sufficiently connected to the asserted unlawful conduct. See *City of New York v Smokes-Spirits.Com, I*nc., 12 NY3d at 622-624.

**2. Defendants Engaged in Consumer Oriented Activity Causing Harm to the Public Interest**

Although New York General Business Law § 349 is, at its core, a consumer protection device, see *Genesco Entertainment v. Koch*, 593 F.Supp. 743, 751 (S.D.N.Y.1984), "corporate competitors now have standing to bring a claim under this [statute] ... so long as some harm to the public at large is at issue," *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 786 F.Supp. 182, 215 (E.D.N.Y.), vacated in part on other grounds, 973 F.2d 1033 (2d Cir. 1992). The consumer orientation of section 349 was noted by the *Genesco* Court, which relied on the Federal Trade Commission Act, 15 U.S.C. § 45 (1982 & Supp. IV 1986) in interpreting the phrase "deceptive practices." The federal act, on which section 349 is modeled, "only prohibits those deceptive practices which affect the public interest." *Id.*at 752. See also *People v. Colorado State Christian College*, 76 Misc.2d 50, 54-56 (Sup.Ct.N.Y.Co.) (discussing legislative history of § 349).

It is now well established in the law of New York that "A defendant engages in 'consumer-oriented' activity if his actions cause any 'consumer injury or harm to the public interest.'" *New York v Feldman,* 210 F Supp. 2d 294, 301 [S.D.N.Y 2002]. "The critical question . . . is whether the matter affects the public interest in New

York, not whether the suit is brought by a consumer or a competitor." (*Securitron,* 65 F.3d at 264)

The "consumer-oriented" element has its origins *In Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (N.Y.1995), a case brought by two union funds against a bank to recover lost interest. In that case, the Court of Appeals limited the scope of the statute by defining the term "deceptive acts and practices" to mean "representations or omissions ... likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego*, 85 N.Y.2d at 26. However, while recognizing that § 349 was "directed at wrongs against the consuming public," *id.,* 85 N.Y.2d at 24, the Court of Appeals did not limit the protection of the statute to unsophisticated consumers. Rather, the Court of Appeals made clear that "plaintiffs claiming the benefit of section 349" could be "entities such as the plaintiffs" in that action—union funds similar to Plaintiffs. *Id.*, 85 N.Y.2d at 25. Indeed, even "corporate competitors ... have standing to bring a claim under this [statute]... so long as some harm to the public at large is at issue." *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir.1995) (quoting *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 786 F.Supp. 182, 215 (E.D.N.Y.), vacated in part on other grounds, 973 F.2d 1033 (2d. Cir.1992)

Conduct has been held to be sufficiently consumer-oriented to satisfy the statute where it involved "an extensive marketing scheme" (*Gaidon v Guardian Life Ins. Co. of Am.*, 94 NY2d at 344), where it involved the "multi-media dissemination of information to the public" (*Karlin v IVF Am.*, 93 NY2d at 293), and where it

constituted a standard or routine practice that was "consumer-oriented in the sense that [it] potentially affect[ed] similarly situated consumers" (*Oswego,*85 NY2d at 27; see *Wilner v Allstate Ins. Co.,* 71 AD3d 155, 164 [2010]; *Elacqua v Physicians' Reciprocal Insurers,* 52 AD3d 886, 888 [2008]). Simply put, "[the] defendant's acts or practices must have a broad impact on consumers at large" (*New York Univ. v Continental Ins. Co.,* 87 NY2d at 320).

Under facts almost identical to those alleged in the instant litigation, one Connecticut U.S. District Court has already rejected DIRECTV/MAS TEC contentions that plaintiffs lack legal standing under that state's consumer fraud statute, because they are neither consumers, nor do they have a business relationship with Defendants.

In *Flynn v. DirecTV*, 3:15-cv-1053 (JAM), (U.S.D.C, D.Ct, 2016) (**Exhibit "C")**, a case in point and of significance, brought against DIRECTV and MAS TEC, defendants moved to dismiss under Rule 12(b)(6), on the grounds that the Complaint failed to adequately allege facts to meet any business relationship requirement to sustain a claim for violation of the Connecticut Unfair Trade Practice Act (CUTPA). Although *Flynn* is not binding on this court, we submit that the legal reasoning and rationale employed by the court is not only instructive, but should be applied in the case at bar.

The *Flynn* court clearly recognized that DIRECTV/MAS TEC "are alleged to have engaged as a regular course of business practice in the perpetuation of a scheme to enrich themselves by means of victimizing and sacrificing the property

interests of landlords to control what fixtures are installed on and remain on the landlords' property." (Exhibit "C").

In recognizing that CUTPA is a remedial statute entitled to liberal construction [similar to GBL § 349] and that the Connecticut Supreme Court has made it clear that a CITPA plaintiff need not have a consumer relationship with the defendant [similar to GBL § 349], the *Flynn* court succinctly observed that DIRECTV/MAS TEC "[knew] that they may only install satellite dishes when they have owner consent, but they train their employees to subvert this requirement and to remain intentionally ignorant of whether such consent has been given. This is precisely the kind of slippery business practice that CUTPA was broadly designed to remedy." (emphasis added).

Indeed, the *Flynn* court emphasized that DIRECTV's "practice succeeds by exploiting the very *lack* of their direct business relationship with the actual property owners and by taking advantage instead of the pre-existing business relationship between tenants and landlords." (emphasis supplied)(Exhibit "C"). Accordingly, the *Flynn* court concluded that "It is clear that an adequate business relationship exists here and that this relationship has allegedly been subject to exploitation by defendants in this case." Moreover, "plaintiffs allegedly suffered an injury as business people when defendants employed a business practice to alter plaintiffs' business property without permission."

Of significance, the Flynn court refused to strike Plaintiffs' claim for punitive damages, noting that "At this stage of the litigation, plaintiffs have alleged

sufficient facts to make plausible that DIRECTV acted with reckless indifference toward the plaintiff landlords in failing to seek their consent." (Exhibit "C").

### 3. A Business Relationship Does Exist Between the Parties

Despite Defendants' protestations to the contrary, in the instant litigation there is a clear-cut business relationship between the parties. Here, DIRECTV/MAS TEC were cognizant of FCC regulations requiring the prior consent of the Landlord, for erection/affixation of its satellite equipment on common areas of Plaintiffs' RDUs. Notwithstanding, DIRECTV/MAS TEC intentionally refused to seek the permission of Plaintiff-landlords. Instead, all communications and consents were secured through and by Plaintiffs' tenants. It is alleged that such acts and conduct tortiously interfered with the terms and conditions of the leases existing between Plaintiffs and tenants/subscribers to DIRECTV.

If DIRECTV/MAS TEC had agreed to pay Plaintiffs for the use and occupancy of a portion of the roof, for affixation of its satellite equipment, the existence of the requisite business relationship would be unrefutable. Here, it is only because no monetary consideration is paid by DIRECTV/MAS TEC, and no consent for use and/or occupancy of the roof has been granted by Plaintiffs, that a trespass has arisen. Nevertheless, the existence of the business relationship has not changed. Only the nature of the business relationship has been altered.

Here, although not direct competitors, Plaintiffs have a type of commercial relationship with DIRECTV/MAS TEC, in which the particular acts of wrongdoing

alleged, will interfere with fair and open competition in the satellite communications marketplace. For example, if Plaintiffs removed and/or damaged the satellite equipment affixed to their roof, without the consent and/or authorization of DIRECTV/MAS TEC, it could expose them to potential legal liability to tenant-subscribers, as well as DIRECTV/MAS TEC. Or, if Plaintiffs independently contracted with Dish TV, a competitor of DIRECTV, to exclusively furnish satellite services at the subject premises, to Plaintiffs' tenants, would DIRECTV/MAS TEC have standing to claim unfair competition? Lastly, under those circumstances, would Plaintiffs' tenants have legal rights to select the satellite service provider of their own choice? These factors, considered singly or jointly, could interfere with fair and open competition in the satellite communications marketplace.

In summary, Plaintiffs have stated a plausible claim under New York General Business Law §349, by alleging that the actions and practices of the Defendants were not only unlawful or unfair, but performed in the conduct of trade or commerce. The evidence demonstrates that the General Business Law §349 violations alleged herein are not incidental acts. Rather, the record supports a conclusion that DIRECTV's activities, as alleged in the Complaint, were uniformly implemented and fell within the scope of its primary business; to wit,, to circumvent FCC regulations, and to sell their satellite services, Defendants did not require Tenant-subscribers to produce any evidence of prior Landlord approval to install DIRECTV system Equipment and caused the installation thereof on roofs and/or

exterior walls of the RDUs owned by Landlords, on the mere representation of a Tenant-subscriber and/or family member over the age of 18 years, that "DIRECTV System installation at (address) has been verbally approved by my landlord (or is not required pursuant to my lease or rental agreement.) " As a proximate result of these practices, common area installations of DIRECTV satellite equipment, without the approval and consent of Landlords, resulted in real property trespass, and actual direct injury, as described herein.

**4. Defendants' Acts Were Misleading In a Material Way**

GBL § 349 does not define materiality. However, the statute is modeled after Section 5 of the Federal Trade Commission Act ("FTCA"). See *Sports Traveler, Inc. v. Advance Magazine Publishers, Inc.*, 1997 WL 137443, at *2 (S.D.N.Y.1997). Section 5 of the FTCA prohibits unfair and deceptive acts affecting commerce. See *FTC v. P.MC.S., Inc.*, 21 F.Supp.2d 187, 190 (E.D.N.Y.1998). It is not necessary to prove Defendants' misrepresentations were made with an intent to defraud or deceive, or were made in bad faith to establish a Section 5 violation. *FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1029 (7th Cir.1988) citing *Beneficial Corp. v. FTC,* 542 F.2d 611, 617 (3rd Cir.1976), cert. denied, 430 U.S. 983 (1977).

Similarly, under GBL § 349, "A material claim is one that ' involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.'" *Bildstein v. MasterCard Int'l Inc.,* 329 F. Supp. 2d 410,414 (S.D.N.Y. 2004) (quoting *Novartis Corp. v. F.T.C.,* 223 F.3d.783, 787 (D.C. Cir. 2000)). The relevant inquiry is not whether the statement is literally

false. *Am. Home Prods. Corp. v. Johnson & Johnson*, 577 F.2d 160, 165 (2d Cir. 1978). Rather," [w]hat is important in determining whether a statement is misleading is the over-all impression it tends to create on the public." *Country Tweeds, Inc. v. F. T. C.*, 326 F.2d 144, 148 (2d Cir.1964).

In this case, the DIRECTV electronic Landlord Permission Forms make absolutely no mention of the applicable FCC rules and regulations, which prohibit the drilling holes in the roof of RDUs and permanently affixing DIRECTV Equipment thereto, without the prior verbal or written consent of the landlords.

Instead, DIRECTV utilizes a single, ambiguous permission form, that is used interchangeably by either the landlord or the tenant. Because the language contained in the permission form does not mention the landlord, it can be interpreted in several ways by the customer. The language can be interpreted that "I [tenant] confirm that I have been granted permission [by landlord] or [I tenant] authorize the DIRECTV Home Service Provider to install a DIRECTV Satellite System at the above-mentioned address."

We submit that the average, reasonably intelligent consumer would have difficulty in comprehending the legal distinctions and conflicting language in this clause. However, even without giving this deception any consideration, the average consumer, in ignorance or disregard of standardized leases prohibiting satellite installation without consent of the landlord, must decide if the reward (getting DIRECTV) is greater than the risk (being denied permission and/or violating their lease for giving permission without authority). The consumer is given the

choice/option to be legal/ethical or not (i.e. to ask permission or forgiveness). We submit that most consumers, when given the option to obtain their landlords permission or not, are more likely to choose the point of least bother and resistance, either because it is more work or because they are afraid of being denied permission. The DIRECTV landlord permission process facilitates this alternative.

We submit that under the objective standard of GBL §349, DIRECTV's Landlord Permission Form is "likely to mislead a reasonable consumer acting reasonably under the circumstances" (*Stutman v. Chemical Bank*, 95 N.Y.2d at 29; *Gaidon v. Guardian Life Ins. Co. of Am.,* 94 N.Y.2d 330,344 (1999); *Oswego*, 85 N.Y.2d at 26; but see *Flattau v. John HancockMut. Life Ins. Co.*, 1986 WL 14977, at *3 (S.D.N.Y.1986) (suggesting that courts should "not look to the average customer but to the vast multitude which the statutes were enacted to safeguard-including the ignorant, the unthinking and the credulous who, in making purchases, do not stop to analyze but are governed by appearances and general impressions.") (citation omitted).

**5. Plaintiffs Have Suffered Ascertainable Loss.**

Here, DIRECTV satellite equipment has been intentionally and permanently affixed to Plaintiffs' roofs without their authorization or consent. At the minimum, Defendants actions and conduct have tortiously interfered with Plaintiffs' contractual rights with their tenants. The trespass caused by the unauthorized installation of satellite dishes has adversely affected the Plaintiff's' exclusive

possessory interests in their RDUs, as well as diminished the curb appeal and fair market value of their RDUs in the residential sales market.

DIRECTV abandons its satellite equipment permanently affixed to roofs and exterior walls of RDUs, requiring Plaintiffs- to expend their own time, money and resources to remove and dispose of the equipment and to perform repairs to the RDU at the site of affixation.

In addition, Plaintiffs have also expended time, effort and money to engage legal counsel to represent their legal interests in this matter. See *Willner v. Allstate Ins. Co.*, 893 N.Y.S.2d 208, 218 (2d Dep't 2010) ("The plaintiffs alleged that they were forced to pay for an attorney, and thus adequately pleaded damages under General Business Law § 349.") *Midland Funding, LLC v. Giraldo*, 39 Misc.3d 936, 950, 961 N.Y.S.2d 743 (Dist.Ct. Nassau County 2013) (costs reasonably incurred defending deceptive lawsuits are "more than adequate" to plead damages under § 349*); Fritz v. Resurgent Capital Services, LP*, 955 F.Supp.2d 163, 174 (E.D.N.Y.2013) ("time spent" defending deceptive lawsuits sufficient under GBL § 349).

**6. An Action Brought under §349 Does Not Require Proof of Actual Reliance**

New York General Business Law §349 does not require proof that Plaintiff relied on a misrepresentation. *Pelman v. McDonald's Corp.,*396 F.3d 508,511 (2d Cir.2005) ("a private action brought under §349 does not require proof of actual reliance"). Rather, "[d]eceptive acts are defined objectively as acts likely to mislead

a reasonable consumer acting reasonably under the circumstances." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009). *Leider v. Ralfe,* 387 F. Supp. 2d 283,292 (S.D.N.Y. 2005) (explaining that §349 defines a deceptive act or practice using an "objective definition," whereby deceptive acts or practices are "limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances."); *Stutman v Chemical Bank*, 95 NY2d 24 (2000).

## POINT IV. THE OTARD REGULATIONS DO NOT PREEMPT INDEPENDENT COMMON-LAW CLAIMS

Defendants contend that Plaintiffs cannot use GBL § 349 as a vehicle to pursue a violation of the FCC over-the-air reception devices ("OTARD") regulations, to assert a regulatory claim for which there is no private right of action. Defendants' argument must be rejected on several grounds.

Firstly, a cause of action pursuant to GBL § 349 does not need to be based on an independent private right of action since the statute applies "to all deceptive acts or practices declared to be unlawful, whether or not subject to any other law of this state" (General Business Law § 349 [g]; *Farino v. Jiffy Lube International, Inc.,* 298 A.D.2d 553, 748 N.Y.S.2d 673, 673 (2d Dep't 2002); *Walts v First Union Mtge. Corp.*, 259 AD2d 322, 323).

Secondly, the Complaint in this matter neither contains a cause of action under OTARD, nor couches an OTARD claim as a Section 349 claim. Rather, this pleading contains a common law cause of action for trespass and a statutory cause of action under GBL § 349, setting forth Defendants' deceptive business practices

which offend public policy, as it has been established by statutes, the common law and otherwise.

The OTARD regulations are not preemptive and in no way preclude a plaintiff from raising common-law actionable wrongs independent of any requirements of OTARD, such as any plaintiff may have raised prior to enactment of such regulations in 1998. In that regard, and as a starting point, "it is a general rule of statutory construction that a clear and specific legislative intent is required to override the common law." *Hechter v. New York Ins. Co.,* 46 N.Y.2d 34 (1978) (("If the statute and the common law rule can stand together, the statute should not be so construed as to abolish the common law rule." (citations omitted)); *Jones v. City of Albany*, 151 N.Y. 223 (1896) ("It is the general rule that an intention to change the rule of the common law will not be presumed from doubtful statutory provisions; the presumption is that no such change is intended, unless the statute is explicit and clear in that direction." (citations omitted) Another "general rule is and long has been that when the common law gives a remedy, and another remedy is provided by statute, the latter is cumulative, unless made exclusive by the statute." *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314 (1983).

When these well-accepted rules of statutory construction are applied to the OTARD regulations, it is overwhelmingly clear that they nowhere mention or otherwise contemplate precluding Plaintiffs' common law causes of action.

## CONCLUSION

For all of the foregoing reasons, Defendants' Rule 12(b)(6) Motions to Dismiss Plaintiffs' §349 GBL claims, should be denied in all respects.

Dated: August 2, 2017

BLAU, LEONARD LAW GROUP, LLC

Steven Bennett Blau
Shelly A. Leonard
23 Green Street, Suite 303
Huntington, NY 11743
(631) 458-1010
sblau@blauleonardlaw.com
sleonard@blauleonardlaw.com

*Attorneys for Plaintiffs*