USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: November 27, 2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
:
WILLIAM FRINTZILAS and ANGELO :
POZZUTO, :
:
Plaintiffs, :
: 17-cv-2368 (KBF)
-v- :
: OPINION & ORDER
DIRECTV, LLC and MASTEC NORTH :
AMERICA, INC., *erroneously named as* :
*MASTEC, INC.*, :
:
Defendants. :
------------------------------------------------------------------X

KATHERINE B. FORREST, District Judge:

On April 2, 2017, plaintiffs William Frintzilas and Angelo Pozzuto, New York landlords, filed suit, seeking to certify a class action on behalf of themselves and other similarly situated New York landlords ("Landlords"). They claim that defendants, DIRECTV, a California limited liability corporation, and MasTec North America, Inc. ("MasTec"),[1] a Florida corporation, engaged in deceptive acts and/or practices, violating New York General Business Law § 349. In addition, plaintiffs bring individual trespass claims. (ECF No. 1, Compl. ¶¶ 1–2.) They allege that defendants installed DIRECTV equipment on the roof and walls of their residential dwelling unit properties ("RDUs") without first receiving authorization from the

---

[1] MasTec North America, Inc. was erroneously named in the complaint as MasTec, Inc., which is a holding company for MasTec North America, Inc. MasTec North America, Inc. is the actual operational entity contracting with DIRECTV.

Landlords. (Id. ¶ 1.) Accordingly, they seek injunctive relief; compensatory, consequential, and punitive damages; costs; and attorneys' fees. (Id. ¶ 2.)

On June 23, 2017, MasTec filed a motion to dismiss the § 349 claim, arguing, inter alia, that plaintiffs lack standing under § 349 and also that they have failed to state a claim under § 349. (ECF No. 5, Defendants' Mem. of Law in Support, ("Defs.' Mem. in Supp.")). After DIRECTV was served as a defendant, it joined in MasTec's motion. (ECF No. 14.) This matter was transferred to the undersigned on September 26, 2017. The Court finds that plaintiffs fail to state a claim under N.Y.G.B.L. § 349. Accordingly, the Court GRANTS the motion.

I. FACTUAL BACKGROUND

The factual allegations discussed below are drawn from the complaint (ECF No. 1) and assumed true for the purposes of this decision.[2]

Plaintiffs are citizens of New York and owners and landlords of residential dwelling unit properties ("RDUs") in New York state. (Compl. ¶¶ 13–19.) DIRECTV is a California limited liability company engaged in the marketing and sales of DIRECTV satellite television service and the leasing and installation of DIRECTV antennae, such as satellite dishes and other equipment designed for over-the-air reception of television broadcast signals ("Equipment") in the State of New York. (Id. ¶ 20.) DIRECTV is a leading provider of digital television

---

[2] In plaintiffs' opposition (ECF No. 17), they include a section entitled "Statement of Material Facts," in which they assert facts not previously asserted in the complaint. The Court does not rely upon those facts in this Opinion. See, e.g., Friedl v. City of New York, 210 F.3d 79, 83 (2d Cir. 2000) ("[A] district court errs when it . . . relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss.").

2

entertainment programming via satellite to residential and commercial subscribers, which services it provides by means of the Equipment that it licenses/leases to subscribers and installs upon the RDU in which subscriber resides. (Id. ¶¶ 22–23.)

Defendant MasTec is a Florida corporation that works as a specialty contractor providing installation fulfillment services to DIRECTV; it is one of DIRECTV's largest installation and service companies. (Id. ¶¶ 5, 23–24.) At all relevant times, MasTec had a contractual relationship with DIRECTV to install equipment at plaintiffs' properties.[3] (Id. ¶ 25.) The contract provides for Equipment to be sold to MasTec, which it then installs. (Id. ¶¶ 27–28.) It further provides that DIRECTV shall, inter alia, direct the technicians to specific work sites, monitor the technicians' locations, determine the number of customers MasTec will serve, and determine the technicians' daily pay rate. (Id. ¶¶ 26–32.)

The leases between plaintiffs and their tenants (the "Leases") prohibit the installation of satellite dishes, including DIRECTV Equipment. (Id. ¶ 38.) Plaintiffs allege that, notwithstanding those leases, defendants installed Equipment on their roofs and exterior walls on the "mere representation of any Tenant-subscriber and/or family member over the age of 18 years that 'DIRECTV System installation at [address] has been verbally approved by my landlord (or is not required pursuant to my lease or rental agreement).'" (Id. ¶ 42.) They further

---

[3] The plaintiffs' complaint appears to contain an error in this section—where it references properties located throughout Connecticut, and not New York. The Court assumes this is a scrivener's error, and proceeds to analyze as if the properties are in New York state, based upon the remainder of the complaint.

3

allege that defendants had constructive knowledge that the Leases prohibit the installation of their Equipment. (Id. ¶ 39.)

Plaintiffs allege that this installation was a knowing and intentional violation of FCC rules and regulations—specifically the Federal Communication Commission's Second Report and Order, In the Matter of Implementation of Section 207 of the Telecommunications Act of 1996, Restrictions on Over-the-Air Reception Devices ("OTARD"), 47 C.F.R. 1.4000. (Id. ¶¶ 33, 45–46.)

Throughout the relevant period, defendants did not pay fees or monetary consideration to plaintiffs or putative class members. (Id. ¶ 47.) Furthermore, plaintiffs allege that, upon termination of tenant subscriptions to its satellite television service, defendant DIRECTV abandoned its Equipment permanently, leaving it affixed to roofs and exterior walls of the RDUs, resulting in additional expense to plaintiffs. (Id. ¶ 48.)

## II.  LEGAL STANDARDS

### A. Motion To Dismiss

On a motion to dismiss, this Court accepts as true all well-pleaded factual allegations. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949–50 (2009). This means that the Court must accept plaintiff's factual allegations in its complaint as true and draw all reasonable inferences in plaintiff's favor. See Famous Horse Inc. v. 5th Ave. Photo Inc., 624 F.3d 106, 108 (2d Cir. 2010). To withstand dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim

4

to relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

When ruling on a motion to dismiss under 12(b)(6), a district court errs if it relies on additional materials not included in the pleadings or relies on "factual allegations contained in legal briefs or memoranda." Friedl v. City of New York, 210 F.3d 79, 83–84 (2d Cir. 2000).

B. New York General Business Law Section 349

New York General Business Law § 349 falls under Article 22-a, New York General Business Law, "Consumer Protection from Deceptive Acts and Practices," and declares unlawful "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in New York State. N.Y.G.B.L. § 349(a). Though originally intended to be enforced by the Attorney General, the statute was amended in 1980 to give a private right of action, "intended to afford additional protection for consumers" so that they could "bring suit on their own behalf." Blue Cross & Blue Shield of N.J., Inc. v. Phillip Morris USA Inc., 818 N.E. 2d 1140, 1143 (N.Y. 2004).

a. Standing

GBL § 349, is, "at its core, a consumer protection device." Securitron Magnalock Corp. v. Schnalbolk, 65 F.3d 256, 264 (2d Cir. 1995). While the plain language for the private right of action under § 349 is expansive ("any person who has been injured by reason of any violation of this section may bring an action in his or her own name"), New York courts have interpreted § 349 more narrowly as a

5

consumer protection statute.  See, e.g., id.; see also Genesco Entertainment v. Koch, 593 F. Supp. 743, 751 (S.D.N.Y. 1984) (recognizing that "Section 349 is a powerful remedy for consumer fraud").

Since the "gravamen of the complaint must be consumer injury or harm to the public interest," Securitron, 65 F.3d at 264 (internal quotation marks omitted), courts in New York have declined to find standing where the plaintiff is neither a consumer nor a competitor.  See City of New York v. Smokes-Spirits.com, Inc., 911 N.E.2d 834, 836 (N.Y. 2009) (finding no standing under § 349 for parties who are neither consumers nor competitors where the plaintiff, the City, alleged harms under § 349 when it lost tax revenue due to defendant's allegedly deceptive marketing of cigarettes to New York consumers).  See also SMJ Group, Inc. v. 417 Lafayette Restaurant LLC, No. 06-cv-1774, 2006 WL 2516519, at *5 (S.D.N.Y. Aug. 30, 2006) (no standing where the plaintiff restaurant owners sued defendants under § 349 for leafleting they claimed was deceptive outside of their restaurants, and plaintiffs claimed they subsequently lost business); Vitolo v. Mentor H/S, Inc., 426 F. Supp. 2d 28, 34 (E.D.N.Y. 2006) (no standing under § 349 where the complaint focused on the losses suffered by plaintiff (a physician) as a result of the fact that he sustained damages removing saline breast implants since the complaint focused "almost entirely on the losses suffered by Plaintiff and his business, rather than to consumers or Plaintiff's patients").

b. Elements Required to State a Claim

In order to state a claim under § 349, plaintiffs must prove three elements: "first, that the challenged act or practice was consumer-oriented; second that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." Stutman v. Chem. Bank, 731 N.E.2d 608, 611(N.Y. 2000) (finding no claim under § 349 where defendants allegedly charged excessive fees since they were not misleading); see also Merck Eprova AG v. Gnosis S.P.A., 901 F. Supp. 2d 436, 456 (S.D.N.Y. 2012).

As a threshold matter, the act or practice engaged in must be considered deceptive. "Section 349 does not grant a private remedy for every improper or illegal business practice, but only for conduct that tends to deceive consumers . . . . It cannot fairly be understood to mean that everyone who acts unlawfully, and does not admit the transgression, is being deceptive. Such an interpretation would stretch the statute beyond its natural bounds to cover virtually all misconduct by businesses that deal with consumers." Schlessinger v. Valspar Corp., 991 N.E. 2d 190, 193 (N.Y. 2013) (finding that including a termination provision in a maintenance contract did not tend, in itself, to deceive consumers, despite the fact that such a provision was forbidden by another General Business Law).

Deceptive practices are considered those "likely to mislead a reasonable consumer acting reasonably under the circumstances." Stutman, 731 N.E.2d at 611–12 (internal quotations marks and citations omitted).

7

III. DISCUSSION

Defendants argue that plaintiffs' § 349 claims fail for four reasons: 1) plaintiffs lack standing under § 349; 2) plaintiffs fail to state a cognizable § 349 claim as they have not alleged any "misrepresentation" by defendants; 3) plaintiffs incorrectly interpreted the FCC regulation and order to require Equipment providers, such as defendants, to obtain direct permission from landlords before installation; and 4) plaintiffs cannot use § 349 as an end-run around regulations that do not, in and of themselves, create a private right of action.

In opposition, plaintiffs gloss over the lack of standing, briefly stating that § 349 is not strictly confined to consumer claims; they further assert that defendants' contracts with consumers are intentionally misleading and therefore fall under § 349's ambit.

Because the Court agrees with defendants that plaintiffs' claims are not cognizable under § 349, it GRANTS defendants' motion.[4]

A. <u>Plaintiffs Lack Standing</u>

On the facts alleged, plaintiffs are not "consumers" under § 349. Nor are they competitors in the business of providing Equipment for satellite television service. Rather, their claim is that defendants deceived consumers (their tenants), and that this deception in turn caused damage to the Landlords. Thus far, New York courts

---

[4] The Court further agrees with defendants that plaintiffs have misstated the OTARD Regulation and FCC Order interpreting it; there is no reference in either to the obligation of a third-party installer to obtain permission from a landlord directly. See 47 C.F.R. § 1.4000(a)(1); 63 FR 71027-01, 1998 WL 888546. Since plaintiffs concede that they do not bring a claim under OTARD, and because the Court finds sufficient basis for dismissal on the bases listed above, it does not engage further with plaintiffs' misapprehension.

8

have found standing under § 349 for "consumers and competitors" and have extended standing no further. Smokes-Spirits.Com, Inc., 911 N.E.2d at 837 (noting that while § 349 had been extended both to consumers and competitors, "the statute ha[s] not yet been interpreted to grant a right of action to parties not suing in either of those capacities") (denying standing for the City of New York based on lost tax revenue it alleged was caused by defendant's deceptive marketing practices). New York courts have further clearly stated that they would "not presume an intent to include recovery for derivative injuries within the scope of the statute in the absence of a clear indication of such intent from the Legislature." Blue Cross, 818 N.E.2d at 1144 (denying standing to insurance company for its derivative injury).

Here, the Landlords' injuries are derivative to the tenants' injuries (if any). They claim that by virtue of defendants' alleged deception, their tenants agreed to installation of Equipment, and that this installation in turn injured their property. The Court declines to adopt plaintiffs' expansive reading of § 349 and agrees with defendants—standing is lacking.

B. <u>Plaintiffs Fail to State a Claim</u>

Moreover, plaintiffs fail to state a claim under § 349. The nub of their claim is that the contracts that tenants sign authorizing the Equipment to be installed are materially deceptive. However, the contractual language that plaintiffs cite in their complaint is straight-forward: the Tenant-subscriber must represent that "DIRECTV System installation at [address] has been verbally approved by my

9

landlord (or is not required pursuant to my lease or rental agreement)." (Compl., ¶¶ 42–43.)[5]

The Court finds it implausible that such a contract, clearly requiring Landlord permission, would be misleading to a "reasonable consumer." Stutman, 731 N.E.2d at 611. Moreover, the Court concurs with defendants' analysis that the only potentially materially misleading statements here are those from the Subscriber-tenants to the defendants, and not the other way around. Since a "Section 349 violation requires a defendant to mislead [a] plaintiff in some material way," plaintiffs' claim must fail. Conboy v. AT&T Corp., 241 F.3d 242, 258 (2d Cir. 2001) (emphasis added).

IV. CONCLUSION

For the reasons stated above, the defendants' motion to dismiss plaintiffs' N.Y.G.B.L. § 249 claim is GRANTED. The Clerk of Court is directed to terminate the motion at ECF No. 5. Plaintiffs' remaining claims for trespass remain live.

SO ORDERED.

Dated: New York, New York
November 27, 2017

_____
KATHERINE B. FORREST
United States District Judge

---

[5] In their opposition, plaintiffs allege that, in fact, for the past four years defendants have used a different and more ambiguous electronic contract; however, as this contract was neither cited nor referenced in the original complaint, the Court does not consider it here.

10